FILED
99 MAR 12 AM 9:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARY E. HOBSON,

    Plaintiff,

vs.                        CASE NO. CV-98-J-253-S

NORWOOD CLINIC,

    Defendant.

ENTERED
MAR 12 1999

## MEMORANDUM OPINION

    Currently pending before the court is the defendant Norwood Clinic's motion for summary judgment (doc. 14), to which the plaintiff filed an opposition thereto ("plaintiff's opposition")(doc. 20). Thereafter, defendant filed a reply to plaintiff's opposition. Both parties have also filed evidentiary submissions in support of their respective positions. The court has reviewed the motion, the memoranda of law and the evidentiary submissions of the parties.

### I. Procedural History

    Plaintiff commenced this action on February 4, 1998 by filing a complaint (doc. 1) alleging that the defendant discriminated against her on the basis of her race (African-American), in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq.* Upon consideration of the pleadings, briefs, and evidentiary submissions, the court concludes that the motion for summary judgment is due to be granted.

## II. Factual Background

In the light most favorable to the plaintiff, the facts of this case are as follows: The plaintiff is an RN who was hired by the defendant in August, 1996 as supervisor over the green module at Norwood Clinic. Complaint at ¶ 7, defendant's memorandum at 2, depo. of plaintiff (Oct. 28, 1998) at 27, 72. Plaintiff was hired by Denise Gamel, a white female. Complaint at ¶ 7, defendant's memorandum at 2, depo. of plaintiff (Oct. 28, 1998) at 36. On April 14, 1997, plaintiff was accused of changing a patient's Coumadin dosage, failing to document the change in dosage, and calling Dr. King, a doctor at the defendant clinic a "son of a bitch".[1] *Id.* Plaintiff denies all of these accusations.[2] Complaint at ¶ 7, Defendant's memorandum at 3. On the same date plaintiff had these charges made against her, she received a verbal counseling conference for her reference to Dr. King. *Id.*

Dr. King had sent a memo to Carla Ritzie, director of the human resource department for defendant, on April 11, 1997, stating that a patient of his stated to him that her Coumadin dosage had been decreased by plaintiff. Exhibit to affidavit of Richard C. Pierce, submitted by defendant. Based on this allegation, an investigation was conducted by Denise Gamel to look for documentation of the change in the patient's Coumadin dosage but none was found. Opposition of plaintiff at 2, depo. of Dr. King at 76. On April 14, 1997, the plaintiff was

---

[1] Coumadin is a blood thinner. In the instance which formed the basis for these allegations, the patient was prescribed Coumadin to prevent blood clots from forming, going to the patient's lung and killing the patient. Depo. of Dr. King, submitted with plaintiff's evidentiary submissions, at 57.

[2] Plaintiff states that she told Gamel and Ritzie that she thought the Coumadin adjustment was made by Louise Hardin, a white employee. Complaint at ¶ 7.

2

disciplined for this as well. Defendant's memorandum at 3, plaintiff's opposition at 2. This discipline is apparently the crux of plaintiff's complaint. Although somewhat garbled, the evidence shows that on April 2, 1997, the patient in question had come to the clinic and seen Dr. King. Depo. of King at 71. At that time, the patient relayed to Dr. King that she had decreased her Coumadin dosage as instructed by plaintiff. Depo. of King at 71, Exhibit 6 to affidavit of R. Pierce, Exhibit 6 to depo. of plaintiff. Based on the lab work obtained from that visit, Dr. King asked to see the patient's chart or lab slip, neither of which he ever obtained. Exhibit 6 to affidavit of Pierce. Dr. King states that "the problem is, there is no documentation that the Coumadin dose was adjusted. The lab slip is not on the chart and there are no notes that on the chart regarding this change. We did make a note in the Coumadin logbook that the change had been made but without any authorization." *Id.* The plaintiff argues that the defendant never produced any evidence linking her to the adjustment in the patient's Coumadin, however, the court notes that the defendant alleges that part of the reason for the discipline imposed was that the change was not documented, hence no written evidence of the change could possibly exist. Opposition of plaintiff at 2.

Plaintiff also claims that at a May 20, 1997 meeting between herself, Denise Gamel and Charlotte Cook, Gamel told plaintiff and Cook that employees were dissatisfied with their assignments. However, Cook, and not plaintiff, made the assignments. Defendant's memorandum at 3-4, affidavit of Cook at 2, depo. of plaintiff (Nov. 16, 1998) at 35. Plaintiff also states that at the same meeting she was accused of making Mattie Sims do an arteriogram on a patient. Memorandum of defendant at 4, depo. of plaintiff (Nov. 16, 1998)

at 37. Plaintiff resigned her employment with defendant on May 21, 1997. Memorandum of defendant at 4, complaint at ¶ 7.

Upon her resignation, plaintiff removed copies of patients medical records from the defendant's premises and maintained the records for at least a year after she ended her employment. Memorandum of defendant at 4. Defendant learned of this on April 6, 1998. Defendant states that it considers this action by plaintiff so serious that it would have fired her immediately upon its discovery of this removal of medical records, had the plaintiff still been an employee at that time. Memorandum of defendant at 4-5. Plaintiff testified at her deposition that she has never worked anywhere that patient records were not considered confidential. Depo. of plaintiff (Oct. 28, 1998) at 62. She further testified that she did not have any of the patients' permission to take their medical records with her. Depo. of plaintiff (Nov. 16, 1998) at 247.

Plaintiff alleges that she was disciplined under circumstances for which other, white employees were not disciplined and that she was constructively discharged due to a racially hostile environment. Complaint at ¶ 8. However, plaintiff does not provide any examples of a hostile environment beyond the April 14, 1997 disciplinary action. Plaintiff does not allege that from April 14, 1997 to May 21, 1997 that she was subject to any discriminatory actions. Plaintiff states only that Dr. King testified that a Coumadin dose mistake can kill a patient and that plaintiff has been diagnosed as suffering from an adjustment disorder by Dr. Velda Pugh. Plaintiff's opposition at 12. However, plaintiff provides no evidence of when she first saw Dr. Pugh, what kind of doctor Dr. Pugh is, if she saw Dr. Pugh more than

one time, or any other evidence which could somehow connect plaintiff's claim of constructive discharge to her claim that she at some time has been diagnosed as suffering from an adjustment disorder.[3]

### III. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to

---

[3]Plaintiff also did not list constructive discharge as one of her grounds for filing an EEOC complaint on May 21, 1997, the same date she alleges she was discharged. In her Charge of Discrimination filed with the EEOC, plaintiff also lists solely April 14, 1997 as the "Date Discrimination Took Place". Exhibit 7 to plaintiff's depo.

5

interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Holcombe v. Alabama Dry Dock & Shipbuilding*, 1998 WL 758012 (S.D.Ala.); citing *Anderson*, 47 U.S. at 251-252.

## IV. Discussion

The plaintiff contends that defendant discriminated against her by treating her differently than other employees who behaved similarly, and that such actions were motivated by her race. To prove these claims under Title VII and 42 U.S.C. § 1981, the plaintiff must prove that the defendant acted with discriminatory purpose. *See e.g. Armstrong v. Flowers Hospital, Inc.,* 33 F.3d 1308, 1313 (11th Cir.1994). The evaluation of evidence bearing on the employer's intent differs, depending on whether the proof is direct of circumstantial evidence. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742 (1993). Here, no direct evidence of discrimination exists as all of plaintiff's allegations are based on her belief that she was treated differently than similarly situated white employees. Plaintiff's complaint at ¶ 7. Thus, this court must look to the circumstantial evidence alleged by plaintiff.[4]

---

[4]In her deposition, in response to a question to the plaintiff about what she thought the defendant did to her that was discriminatory, the plaintiff responded that she was accused of giving Coumadin to a patient, and that she did not do this. Depo. of plaintiff (Oct. 28, 1998) at 16. The plaintiff then states that the nurse assigned to that physician (Louise Hardin) would have changed the medication and that nurse is white. *Id.*

When evidence of discrimination is circumstantial in nature, the Supreme Court has fashioned a three prong test for focusing the court's examination of the evidence and allegations. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248; 252-253; 101 S.Ct. 1089, 1093-1094 (1981). First, the plaintiff must establish a *prima facie* case of discrimination. Establishment of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *Burdine,* 450 U.S. at 248; *Combs v. Plantation Patterns,* 106 F.3d 1519 (11th Cir. 1997). Meeting this burden creates a presumption of discrimination. *Combs,* 106 F.2d at 1528.

Assuming the employee meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Id.* The defendant can feasiblely present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted. *Brown v. American Honda Motor co., Inc.,* 939 F.2d 946, 950 (11th Cir.1991), *cert. denied,* 502 U.S. 1058 (1992)(quoting *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590. 596 (11th Cir.1987).

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255 and n. 10.[5] The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered

---

[5]The disappearance of the presumption does not compel summary judgment in favor of a Title VII defendant. The ultimate question remains the same: whether the plaintiff can persuade the trier of fact that she has been the victim of intentional discrimination. *See Howard v. BP Oil Co.,* 32 F.3d 520, 525 (11th Cir. 1994).

8

by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804.

In order to establish a *prima facie* case of discrimination concerning discipline of employees, the plaintiff must show that she was treated differently than similarly situated employees. *McCollum v. Bolger,* 794 F.2d 602, 608 (11th Cir. 1986). A plaintiff asserting disparate treatment is required to prove discriminatory animus. *Edwards v. Wallace Community College*, 49 F.3d 1517, 1520-1521 (11th Cir.1995); citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-805, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973).

Plaintiff argues that Louise Hardin, a white nurse, made a similar mistake at another facility. Opposition of plaintiff at 3. How another facility disciplined its employees has absolutely no relationship to whether or not plaintiff here was disciplined because of a racial animus. This is not an issue of material fact and adds no weight in plaintiff's favor. While plaintiff states that she believed that Louise Hardin actually changed the patient's Coumadin, on this occasion, no evidence supports this interpretation. Additionally, this court finds that who actually changed the dosage is not at issue, rather, the question before this court is whether, based on the evidence before the defendant, did it act reasonably in issuing the disciplinary notice of April 14, 1997. *See Jones v. Bessemer Carraway Medical Center*, 151, F.3d 1321, 1324, n. 16 (11th Cir.1998)("But federal courts do not sit to review the accuracy of the employer's decision to terminate a plaintiff's employment" citing *Nix v. WLCY*

*Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir.1984)("Title VII is not a shield against harsh treatment at the workplace....")).

In *Jones v. Gerwens*, 874 F.2d 1534 (11th Cir. 1988), the Court reviewed the standard of proof in a disparate treatment case. The court stated, "the most important variables in the disciplinary context, and the most likely sources of different but nondiscriminatory treatment, are the nature of the offenses committed and the nature of the punishment imposed. 874 F.2d at 1539-1540; citing *Moore v. City of Charlotte,* 754 F. 2d 1100, 1105 (4th Cir.), *cert. denied* 472 U.S. 1021, 105 S.Ct.3489 (1985). In *Jones,* the court then states that "we hold that, in cases involving alleged racial bias in the application of discipline for violation of work rules, the plaintiff, in addition to being a member of a protected class, must show either (a) she did not violate the work rule or (b) she engaged in misconduct similar to a person outside the protected class and that the disciplinary measures imposed were more severe.... The law is clear that, even if a Title VII claimant did not in fact commit the violation with which he is charged, an employer successfully rebuts any *prima facia* case of disparate treatment by showing that it honestly believed the employee committed the violation." *Jones*, 874 F.2d at 1540; citing *Chaney v Southern Railway Co.*, 847 F.2d 718, 723-724 (11th Cir. 1988)(focusing disparate treatment inquiry on whether employer has "reason to believe" employee was trying to cover up on-duty marijuana use; *Nix*, 738 F.2d at 1186 ("if an employer applies a rule differently to people it believes are differently situated, no discriminatory intent has been shown").

Plaintiff, however, argues that whether the defendant was reasonable in its belief that "the plaintiff committed the violation" is a question of fact. Plaintiff relies on *United States*

10

*Postal Service Board v. Aikens*, 460 U.S. 711, 716-717 (1983) for this proposition. After a thorough reading of *Aikens*, this court is unable to find any language in it which suggests that "the state of mind of the employer is a question of fact". Opposition of plaintiff at 9. That case stated that "the district court must decide which party's explanation of the employer's motivation it believes" in discussing the court finding whether not the plaintiff has met his or her ultimate burden of persuading the court that the plaintiff has been a victim of intentional discrimination. *Aikens*, 460 U.S. at 716, 103 S.Ct. 1478, 1482. The court goes on to hold that:

> The law often obliges finders of fact to inquire into a person's state of mind. As Lord Justice Bowen said in treating this problem in an action for misrepresentation nearly a century ago:
>> "The state of a man's mind is a s much a fact as the state of his digestion. It is true that it is very difficult to prove what the state of a man's mind at a particular time is, but if it can be ascertained it is as much as a fact as anything else. *Eddington v. Fitzmaurice*, 29Ch.Civ. 459, 483 (1885).

*Aikens*, 460 U.S. at 716-717, 103 S.Ct. at 1482.

Here, the court finds that the basis for the plaintiff's discipline began with the April 11, 1997 letter from Dr. King to Denise Gamel in which he stated that a patient told him that the plaintiff instructed her to reduce her Coumadin. Gamel and Ritzie then searched the hospital's records to find if any documentation of this change existed. They could not find any. In consequence, on April 14, 1997, the plaintiff received a written warning. Exhibit 18 to affidavit of Pierce. The written warning stating that the plaintiff would be fired if she

11

continued in such actions is reasonable given what the employer believed the plaintiff had done.[6]

Thus, this court must decide if, given the circumstances, the issuance of a disciplinary notice against the plaintiff by her supervisor was reasonable.[7] The plaintiff fails to provide this court with evidence of how the defendant disciplines other nurses, whether of the same race or other races that plaintiff, upon forming a belief that that nurse altered a patient's medication. At most, plaintiff established that a white nurse, while employed at another facility, was written up by her supervisor for flushing a Heparin lock with Heparin instead of Heparin lock. This is hardly evidence of discrimination by the defendant.[8] The plaintiff

---

[6] Interestingly, the allegations causing the plaintiff's discipline originated with Dr. King, although plaintiff points at Gamel and Ritzie for evidence of discrimination. While plaintiff tries to find discrepancies between the testimony of Ritzie and Gamel, this court does not find the excerpts submitted of their depositions to vary greatly as to material facts. Regardless of what any other nurses at the defendant clinic did, Dr. King informed the plaintiff's supervisor that his patient told him that plaintiff (and not a white nurse) changed the patient's medicine dosage.

[7] Stated differently, this court must decide whether, upon an examination of the record, the plaintiff has created an issue of fact about the disbelievability of the employer's reason for the decision. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1533 (11th Cir.1997).

[8] The deposition testimony submitted by plaintiff is as follows;
Q. Prior to coming to Norwood Clinic, were you ever disciplined at Carraway?
A. Yes, I was.
Q. What were you disciplined for?
A. Medication error.
Q. What was that medication error?
A. I had – actually there was two times. One was when I had a patient that I needed to flush a Heparin lock, and I was in a hurry, and I –actually what happened was I flushed it with regular Heparin...
...
Q. Was there a written record of that?
A. Yes.
Q. Did you have to sign anything?
A. Yes, I did.

12

has provided the court with many legal references which state that a plaintiff can put into question the genuineness of the employer's putative non-discriminatory purpose by arguing that the stated purpose is implausible, absurd, or unwise. *See e.g Combs v. Plantation Patterns*, 106 F.3d 1519, 1530 and 1538 (11th Cir.1997)(The district court must evaluate whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherence, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence" (citations omitted).

Plaintiff states that Gamel testified that she looked for the patient records with Ritzie late one night, while Ritzie stated in deposition that she was not aware of any investigation by Gamel. Plaintiff opposition at 2. However, this characterization of the facts is simply incorrect. Gamel stated in deposition that "we went through every file in that room looking for anything that could have been misfiled. We went through the nurses' stations. We did this late one night and we stayed very, very late." Depo. of Denise Gamel, evidentiary submission of plaintiff, at 90. Ritzie stated in her deposition:

> Q. How long did you look for documentation?
>
> A. Probably a little over an hour.
>
> Q. Did you do it with Denise or separately?
>
> A. With Denise.

---

Q. What kind of discipline did you receive?
A. They just wrote it up and talked to me. That was it.
Depo. of Louise Hardin, evidentiary submission of plaintiff, at 58-59.

Deposition of Carla Ritzie, evidentiary submission of plaintiff at 50. Plaintiff also alleges that Gamel testified that disorganization at the plaintiff's employment location made documentation of hospital evidence difficult. Opposition of plaintiff at 3, citing to depo. of Gamel at 83. However, a reading of this page of Gamel's deposition does not support plaintiff's interpretation.

While plaintiff alleges that she was treated differently from other employees, she provides no evidence of how other employees were disciplined for potentially fatal medication changes. From another point of view, plaintiff provides no evidence of how other nurses accused of changing a patient's medication at the defendant clinic, are treated or disciplined. Assuming another RN also was accused of changing a patient's medication dosage, unless she was also employed by Norwood Clinic, she was not a similarly situated employee. *See Jones v. Bessemer Carraway*, 137 F.3d 1306, 1312 (11th Cir.1998)(part B of opinion superceded on denial of r'hrg, 151 F.3d 1321).[9] This court can find no evidence that plaintiff suffered a differential application of the defendant's disciplinary procedures.[10] *See e.g. McDonnell Douglas*, 411 U.S. 792.

Based on a consideration of the above, this court finds that the plaintiff has failed to meet her burden of establishing that she was subjected to disparate treatment and thus failed

---

[9]*Jones v. Bessemer Carraway* also contains an interesting discussion that not all medication errors are of equal severity. 137 F.3d at 1312.

[10]In fact, plaintiff has presented no evidence of whether defendant even has a standard disciplinary procedure for medication errors of its staff. The court notes that evidence the defendant has such procedures and did not follow them on this occasion would at least add credence to plaintiff's claim of disparate treatment.

to make out a prima facie case of race discrimination. However, even assuming this court found that the plaintiff had made out a *prima facie* case of race discrimination, the court finds that the defendant established nondiscriminatory reasons for its actions. Clearly, undocumented changes in patient's medications is a huge potential liability for a medical facility. Even the plaintiff stated that she understood why there was cause for concern given the allegations. See attachment to Exhibit 14 of affidavit of Pierce, depo of Dr. King at 58n ("I was concerned about the safety of my patients"). The plaintiff has not provided any evidence that the reason stated by the defendant for the adverse action was pretextual. As such, plaintiff has not met her burden to proceed past a motion for summary judgment. *See Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095 ("The plaintiff retains the burden of persuasion. She now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision").

In order to establish her claim of a racially hostile work environment, which plaintiff alleges led to her constructive discharge, the plaintiff must show that "the workplace is permeated with 'discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment...." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370 (1993)(internal citations omitted).[11]

---

[11]While the defendant alleges that the plaintiff failed to file a charge with the EEOC on this claim within 180 days of her resignation, and therefore this claim is due to be dismissed, the court finds that the EEOC claim arguably could be construed to have contained enough of an allegation to put the employer on notice that the "adverse terms, conditions and privileges of employment" was why the plaintiff resigned. Thus, without deciding whether the plaintiff is entitled to proceed on this claim, the court finds that the plaintiff has failed to establish that she

15

While the plaintiff alleges that she waited a month for the defendant to take corrective action, the plaintiff does not state what corrective action she was seeking, or even why she thought corrective action was necessary. Plaintiff's opposition at 11-12. She also states no facts to support her claim that her working conditions were so severe that she was forced to resign. Plaintiff's opposition at 12. The general rule for constructive discharge if that "if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer ... is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee." *Doe v. DeKalb County School District*, 145 F.3d 1441, 1450 (11th Cir.1998), citing *Young v. Southwestern Sav. and Loan Asso.*, 509 F.2d 140, 144 (5th Cir.1975).

At best, this court finds that the plaintiff was disciplined for something she claims she did not do. No evidence of any adverse aftermath of that discipline has been placed before this court. Documents from the April 14, 1997 meeting state only that the plaintiff was informed that she must have a doctor's orders to change medication and if asked to do so, she should ask for the dosage and go to Denise (Gamel). Exhibit 14 to affidavit of Pierce.[12] No other evidence of the plaintiff's working conditions has been submitted.[13]

---

was subjected to a hostile environment at any time which would support a claim for constructive discharge.

[12]Submitted as an attachment to that affidavit as well is a handwritten summary of the discussion held with the plaintiff. It notes that the plaintiff denies changing the medication and that the plaintiff understood why her supervisor was concerned.

[13]The record does contain a passing reference to a leave of absence taken by the plaintiff. However, the court cannot determine form the evidence in front of it whether the plaintiff took a leave of absence after the April 14, 1997 discipline and returned on May 20, 1997, or at some

16

Gamel also testified that she was no expecting a resignation letter from the plaintiff. Depo. of Gamel at 190.

This court can find no evidence in the facts before it that the plaintiff was subjected to a racially hostile environment. While plaintiff may have perceived her work environment to be hostile, no evidence has been presented to this court that any such perceived hostility was based on the plaintiff's race. Furthermore, the plaintiff's subjective feelings about her employer's actions are not considered by the court an assessing constructive discharge claims. Rather, the court must determine whether a reasonable person in the plaintiff's position would be compelled to resign. *Doe,* 145 F.3d at 1450, citing *Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1317 (1th Cir.1989).

The plaintiff does not assert whether the contested discipline was a part of the allegedly hostile environment, or if it was because her supervisor thought she had made work assignments with which employees were unhappy, or if she just thought her supervisors were not nice to her. In fact, no evidence that plaintiff was subjected to any type of environment, good bad or otherwise, either before April 14, 1997 or between April 14, 1997 and May 21, 1997 has been submitted to this court. Thus, this court cannot, as a matter of law, find that a reasonable person in the plaintiff's position would have felt as though she was forced to resign.

---

other point in time. Depo. of Gamel at 89 (" I remember we had meetings prior to having a discipline. Then we had the discipline in my office. I remember she went out for an extended period of time on leave, and then she came back, and there was a meeting....").

17

## V. Conclusion

In consideration of the foregoing, the court can find no evidence that the plaintiff was disciplined either because of her race, or more harshly because of her race. The court can also find no evidence of a racially hostile environment.

Therefore, the Court **GRANTS** the defendant's motions for summary judgment on all counts of the complaint. This case is **DISMISSED** with **PREJUDICE**.

**DONE** and **ORDERED** this the ___11___ day of ___March___, 1999.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE